Edward F. **RYAN**, Plaintiff, Appellant,

v.

Gerald W. **CLEMENTE**, et al.,
Defendants, Appellees.

No. 89–1805.

United States Court of Appeals,
First Circuit.

Heard Jan. 9, 1990.
Decided April 17, 1990.

**178**

Paul G. Holian, Boston, Mass., for plaintiff, appellant.

Despena Fillios Billings, Asst. Atty. Gen., with whom James M. Shannon, Atty. Gen., Boston, Mass., was on brief; for the state defendants, appellees.

Before BREYER and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.

BREYER, Circuit Judge.

Gerald Clemente, a former police officer, masterminded a scheme to steal advance copies of police department promotion exams and sell them to policemen intending to take the exam. He carried out this scheme, at different times, between 1976 and 1984. In 1986, the federal government indicted him and others for mail fraud and related crimes. We upheld the ensuing convictions. *See United States v. Doherty*, 867 F.2d 47 (1st Cir.), *cert. denied sub nom. Deliere v. United States*, —— U.S. ——, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989).

In December 1987 Edward Ryan, a policeman, brought a class action in federal court, seeking damages and other relief for himself and all other victims of Clemente's dishonest "exam stealing" activity. Ryan did not, however, limit his complaint to Clemente and other convicted criminals. In addition, he sued (1) past and present Commissioners of the Massachusetts Civil Service Commission, (2) past Administrators of the Massachusetts Department of Personnel Administration, and (3) the former Attorney General of Massachusetts and his First Assistant. He sued each of these state officials in his or her individual capacity. He charged all of them, *in essence*, with (1) having unreasonably failed to investigate the "exam stealing" scheme (thus violating the victims' "civil rights," *see* 42 U.S.C. § 1983), and (2) having thereby participated in the fraudulent exam-stealing scheme (thus violating the anti-racketeering laws, 18 U.S.C. §§ 1961–1968 (RICO)). Press and public were made aware of Ryan's charge that the state officials were "racketeers" who had caused $150 million in damages. *See* Boston Globe, Dec. 8, 1987, at A1.

In September 1988 the federal district court dismissed Ryan's claims against the state officials. After providing Ryan and his attorney Paul Holian considerable opportunity to set forth the factual information that had led them to bring these claims, the district court awarded the state officials their attorney's fees (of approximately $26,000) as a "sanction" against Ryan's attorney. *See* Fed.R.Civ.P. 11. The court concluded that Holian had signed the complaint without making the "reasonable inquiry" that Rule 11 requires him to make in order to assure that a complaint (or other signed court document) is "well grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *Id.*

Holian appeals the Rule 11 sanction and the size of the attorney's fees award. We

have reviewed the record, giving appropriate weight to the district court's findings of fact, fact-based legal characterizations, and choice of remedy. *See Kale v. Combined Ins. Co.*, 861 F.2d 746, 757–58 (1st Cir. 1988). Having done so, we conclude that the court acted lawfully in imposing the sanction. We shall briefly explain our reasons for reaching this conclusion in respect to each of Ryan's two legal claims.

■ 1. *The "civil rights" claim.* We, like the district court, assume purely for the sake of argument (and in order not to discourage imaginative legal arguments), that, as a legal matter, Ryan could show a violation of 42 U.S.C. § 1983 simply by proving, as the complaint alleged, that the state officials, in October 1978, had evidence of an exam-stealing scheme, but "ceased ... investigat[ing]" it. *See* Complaint ¶ 28; *id.* ¶ 29 (alleging that the state officials, despite "reliable information" of exam stealing, "took no action, made no investigation" into the scheme "between 1978 and 1984"). Even making this assumption about the law, however, we cannot find in the record evidence sufficient to undermine the district court's conclusion that Holian failed to make a "reasonable inquiry" to determine that the *factual basis* for the complaint was "well grounded." *See* Fed.R.Civ.P. 11.

The record material, particularly the affidavit of police officer David McCue, upon which Holian relies, shows that in late 1978, Frank Thorpe, a retired policeman, offered to sell McCue a stolen exam; it shows that McCue reported the offer to superiors; it indicates that state authorities investigated and prosecuted Thorpe, *see Commonwealth v. Thorpe*, 384 Mass. 271, 424 N.E.2d 250 (1981), *cert. denied*, 454 U.S. 1147, 102 S.Ct. 1011, 71 L.Ed.2d 300 (1982); and it shows that McCue continued to assist state officials in their investigation. As the district court found, it shows that the state officials, in fact, *did* investigate, not that they *failed* to do so.

The information in the record suggesting the contrary consists of several statements of the following sort:

(a) Holian himself, in an affidavit, says he based his factual conclusions on "review of numerous records, examination of news accounts, and the interview of fact witnesses;"

(b) McCue's affidavit says he told Holian that he was "aware that few if any of the specific complaints made to me and related by me to the Attorney General's office were investigated;" and

(c) McCue's affidavit suggests that he told Holian that it "was apparent" to McCue that "there was no significant investigation of this crime."

These last mentioned pieces of evidence, produced in response to a Rule 11 motion for sanctions, do not require the district court to have found "reasonable inquiry." If anything, they suggest the opposite. Holian's own statement that he looked at records, examined news accounts, and spoke to witnesses, shows nothing in the absence of a description of what or who the records, news accounts, and witnesses were and what they told him. The district court could reasonably have thought that, if those sources had produced any information supporting the complaint's factual allegations, Holian would have said so. Similarly, the conclusory remarks in McCue's affidavits do not help Holian. Did McCue, in Holian's office, simply say to Holian, in so many words, "I think the state did not investigate"? If so, why did Holian not then ask, "Upon what, specifically, do you base that conclusion? Please give me a few details, say, names, dates, the number of conversations you had with state officials, and just what you told them and they told you." If Holian did not ask something like this, in so serious a matter, before filing his complaint, the district court could find that he did not make a "reasonable inquiry" as that term is used in Fed.R. Civ.P. 11. If Holian *did* ask such questions, and the answers did not bolster his factual conclusions, McCue's statements do not significantly help him.

Of course, it is logically possible that Holian asked McCue specific questions, McCue gave helpful, detailed answers, and

Holian simply failed to tell this to the district court. Given the clarity of the sanctions motion, the extra time the district court provided Holian to respond, and Holian's basic legal competence, however, the district court was free to ignore this possibility, to hold Holian to what he filed, and, consequently, to disregard McCue's (and Holian's) conclusory statements. Without these statements, the record (with one exception) contains no support for the complaint's factual allegations. The one exception consists of the time that elapsed between Thorpe's prosecution in 1981 and the federal prosecution in 1986. Given the complexities of the scheme and the indications of both federal and state investigation, however, we cannot disturb the district court's conclusion that this time lapse, by itself, did not justify charging the state officials with a "failure to investigate" or excuse Holian from further factual "inquiry."

■ 2. *The RICO claim.* In order to violate the federal "racketeering" statute, a defendant must be "associated with" a criminal enterprise and "participate" in the conduct of that enterprise's affairs through a "pattern of racketeering activity." 18 U.S.C. § 1962(c). While courts should not use Rule 11's sanctions to inhibit "good faith" arguments for changes in the law, we are not aware of any non-frivolous legal theory that could have supported a finding that state officials were members of Clemente's criminal organization.

Holian's legal theory, as set forth in the complaint, finds the necessary "association" in the fact, pure and simple, that the state officials failed reasonably to investigate. It finds the necessary "participation" by the state officials (in an enterprise whose "central purpose" was "the obtaining of illicit pecuniary gain at the expense of honest police officers taking the examination ... fairly," Complaint ¶ 38) in the fact that the state government routinely mailed interview notices to successful applicants. We have found no case which suggests this conduct could be sufficient to meet the law's requirements. To the contrary, although much about the RICO statute is not clear, it is very clear that those

who are "associate[s]," 18 U.S.C. § 1962(c), of a criminal enterprise must share a "common purpose." *See United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (holding that an "enterprise" is "a group of persons associated together for a common purpose of engaging in a course of conduct"); *Atlas Pile Driving Co. v. DiCon Financial Co.,* 886 F.2d 986, 995 (8th Cir.1989); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 15 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990); *United States v. Feldman,* 853 F.2d 648, 656 (9th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989); *Averbach v. Rival Mfg. Co.,* 809 F.2d 1016, 1018 (3d Cir.), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3187, 96 L.Ed.2d 675 (1987); *United States v. Griffin,* 660 F.2d 996, 1000 (4th Cir.1981) ("Proof of the existence of an associated-in-fact enterprise requires proof of a 'common purpose' animating its associates"), *cert. denied sub nom. Garonzik v. United States,* 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 313 (1982); *see also United States v. Bledsoe,* 674 F.2d 647, 665 (8th Cir.) (stating that "commonality of purpose" is the "sine qua non of a criminal enterprise"), *cert. denied sub nom. Phillips v. United States,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982). Requiring that members of an enterprise have a "common purpose" limits the potentially boundless scope of the word "enterprise;" it distinguishes culpable, from non-culpable, associations. *See Bledsoe,* 674 F.2d at 664–65. (*United States v. Elliot,* on which Holian relies, is not to the contrary; it holds that defendants who participate in different crimes can still be associates of one enterprise "so long as we may reasonably infer that each crime was intended to further the enterprise's affairs." 571 F.2d 880 (5th Cir.), *cert. denied sub nom. Delph v. United States,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 *and cert. denied sub nom. Hawkins v. United States,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978).) Given this state of the law, and given the serious consequences for any man or woman, state

official or private person, who is publicly accused of "racketeering," even in a private complaint, the district court could find that the complaint, insofar as it espoused the particular theory of "racketeering" just described, was not properly grounded in the law.

Of course, insofar as the complaint accuses the state defendants of sharing the enterprise's improper objective—making money—and of having furthered that objective, it sets forth a proper legal theory. But the record contains no factual support for this accusation, and no indication that the appellant made a "reasonable inquiry" to determine the existence or nonexistence of such factual support.

■ 3. *Sanctions.* Holian argues that the $26,000 sanction is too high. He says that the defendants' counsel, who were government employees, should have "broken down [their actual salaries] to an hourly rate" instead of billing at rates (of $170–175 per hour) based on their seniority and experience. Holian, however, waived this objection by his failure to raise it below. *See Croteau v. Olin Corp.*, 884 F.2d 45, 46 (1st Cir.1989); *Johnson v. Allyn & Bacon, Inc.*, 731 F.2d 64, 73 (1st Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984). Furthermore, because the fees are not so exorbitant as to constitute a "gross miscarriage of justice," awarding them was not "plain error." *See Denny v. Westfield State College*, 880 F.2d 1465, 1473 (1st Cir.1989); *Sanchez Arroyo v. Eastern Airlines, Inc.*, 835 F.2d 407, 408–09 (1st Cir. 1987); *cf. Unanue–Casal v. Unanue–Casal*, 898 F.2d 839, 846 (1st Cir.1990) (describing district court's broad authority under Rule 11 to fashion an "appropriate" sanction).

For these reasons the judgment of the district court is

*Affirmed.*