**Roberto NAVARRO–AYALA, et al., Plaintiffs, Appellees,**

**v.**

**Rafael HERNANDEZ–COLON, Governor of the Commonwealth of Puerto Rico, et al., Defendants, Appellants.**

No. 92–2030.

United States Court of Appeals, First Circuit.

Heard Feb. 3, 1993.

Decided Aug. 20, 1993.

Carlos A. Del Valle Cruz with whom Ramirez & Ramirez, Jorge E. Perez Diaz, Secretary of Justice, Com. of P.R., and Anabelle Rodriguez, Sol. Gen., Com. of P.R., Hato Rey, PR, were on brief for defendants, appellants.

Carlos Garcia Gutierrez with whom Armando Cardona Acaba, Puerto Rico Legal Services, Inc., and Luis M. Villaronga, San

Juan, PR, were on brief, for plaintiffs, appellees.

Before BREYER, Chief Judge, TORRUELLA and BOUDIN, Circuit Judges.

BREYER, Chief Judge.

Kenneth Colon, an attorney, appeals a $500 sanction that the district court imposed after finding that he had violated Rule 11 of the Federal Rules of Civil Procedure. The district court based the sanction upon a motion that Colon signed, on behalf of the Commonwealth of Puerto Rico, which asked the court to reduce the compensation paid to a special master. After reviewing the motion and the record, we find no violation of Rule 11. We conclude that the sanction is without basis in law, and reverse the order imposing it.

## I

### Background

The sanction arose in the context of lengthy litigation seeking to reform part of Puerto Rico's mental health system. *See, e.g., Navarro–Ayala v. Hernandez–Colon,* 956 F.2d 348 (1st Cir.1992). In 1974, a group of patients at Rio Piedras Hospital filed suit, claiming that conditions there violated the federal Constitution. In 1977, the district court entered a Stipulation, agreed upon by the parties, which prescribes reforms and sets standards for care and treatment. In 1985, the district court appointed a Special Master who, assisted by a staff, was to monitor compliance with the Stipulation. In 1987, the district court began to interpret the Stipulation as applying to other hospitals in Puerto Rico (at least insofar as they treated patients transferred from Rio Piedras). The Special Master began to monitor treatment conditions and seek compliance with the Stipulation at, at least, one other hospital.

In late 1991, this court held that the Stipulation applied only to conditions at Rio Piedras; in the court's view, the parties had not agreed to its application elsewhere. *Navarro–Ayala v. Hernandez–Colon,* 951 F.2d 1325, 1346 (1st Cir.1991) ("*Navarro I*"). The court's opinion also observed that Rio Pie-

dras Hospital seemed to be close to achieving full compliance with the Stipulation's conditions. *Id.* at 1329 n. 3. About one month later, in January 1992, the district court reappointed the Special Master, and his monitoring staff, to serve until the end of the year.

In February 1992, the Commonwealth filed the motion, signed by attorney Colon, that is the subject of this appeal. The motion asked the district court to reconsider its January 1992 reappointment of the Special Master, to reduce the length of the term of that reappointment, to reduce the level of compensation paid the Master and his staff, and to relieve the Commonwealth of the burden of paying for a year's worth of monitoring services in advance. After considering and rejecting the motion, the district court decided that its signer had violated Rule 11. The district court ordered a sanction of $500. The sanctioned attorney, Kenneth Colon, now appeals.

## II

### Review of the Sanction Order

Under Rule 11 (in relevant part), an attorney's signature on a motion paper certifies that "to the best of the signer's knowledge, information and belief formed after reasonable inquiry, [the motion] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law ..." Fed.R.Civ.P. 11. The district court concluded that the signer of the motion paper before us failed in his duty to undertake reasonable inquiry. In reviewing that holding, we must take account of that court's greater familiarity with relevant context, and "apply an abuse-of-discretion standard." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 399, 110 S.Ct. 2447, 2457, 110 L.Ed.2d 359 (1990); *see also Muthig v. Brant Point Nantucket, Inc.,* 838 F.2d 600, 603 (1st Cir.1988). Applying that standard, we have found no lawful basis for applying a sanction in this case.

The reader can most easily understand why we reach this conclusion by examining attorney Colon's motion paper, attached to

this opinion as an Appendix. Just what is it about this paper, one might rightly ask, that would violate Rule 11? The document makes three requests. First, the motion asks the district court to reappoint the Special Master to a term shorter than an additional (nearly) full year. It relies on the fact that our then-recent *Navarro I* opinion both 1) limited the Stipulation's scope to conditions at Rio Piedras Hospital, and 2) referred to Rio Piedras' conditions as close to compliance. In light of those reasons, the motion asserts that the Master's duties under the Stipulation may be less extensive in the coming year than the district court had previously thought. And, it claims that the parties' briefs discussing the implications of *Navarro I* (scheduled for submission in mid-March) would clarify the more limited scope of those future duties.

Second, the motion asks the district court not to require the Commonwealth to "pre-pay[ ]" a year's worth of monitoring services, for such payment would be "premature" given that "the need for and extent of these services has not been defined." It adds that there "is no reason why the *required* monitoring services cannot be compensated after their performance...." As authority, it cites Rule 53(a) of the Federal Rules of Civil Procedure, which gives federal courts broad authority to structure a special master's compensation. *See* Fed.R.Civ.P. 53(a) (compensation shall be paid "as the court may direct").

Third, the motion opposes the rates of compensation for the Special Master and staff set forth in the court-approved budget. The motion, in an Appendix A, presents a chart which says, in effect, that the Commonwealth compensates its judges, inferior judicial officers, and comparable health care personnel at much lower rates of pay. And the motion, in referring to Rule 53(a), makes clear that the district court has wide discretion to set the proper amount of compensation. *See* Fed.R.Civ.P. 53(a) (compensation "shall be fixed by the court").

■ The district court based its Rule 11 finding primarily upon the motion's third request, seeking a reduction in compensation. The January 1992 order reappointing the Special Master provided for compensation at the following hourly rates:

| | |
|---|---|
| Special Master | $100.00 |
| Special Master's assistant | 30.00 |
| Psychiatrist | 75.00 |
| Psychologist | 75.00 |
| Social worker | 60.00 |
| Occupational therapist | 25.00 |
| Quality assurance director | 25.00 |

The appellant's motion in opposition set forth (in its Appendix A) a different and much lower set of hourly rates at which, it said, the Commonwealth paid comparable employees:

| | |
|---|---|
| Superior Court judge | $ 27.00 |
| Superior Court law clerk | 10.00 |
| Psychiatrist | 11.20 |
| Psychologist | 11.20 |
| Social worker | 9.80 |
| Occupational therapist | 7.90 |
| Quality assurance director | 7.90 |

The district court took objection to this latter schedule. The court said that this schedule did *not* reflect the pay that many health care professionals in the Commonwealth's employ actually receive. The court said further that Colon had failed to make a *reasonable prefiling inquiry* into the actual pay of such professionals before suggesting Appendix A's pay scales, which were "drastically below the staff's current rates." These suggested pay scales, the court added, were "insulting to the professionals on the Special Master's staff."

In our view, the record does not support the district court's conclusion that Rule 11 required attorney Colon to make a further inquiry. For one thing, the object of Rule 11's inquiry requirement is to avoid filings that are baseless. *See* Fed.R.Civ.P. 11 (signature certifies that "to the best of the signer's knowledge ... formed *after reasonable inquiry*, [the motion] is *well grounded in fact* and *is warranted*" by law ) (emphasis added); *Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. at 2454 ("the central purpose of Rule 11 is to deter baseless filings"). Here, the inquiry that the district court believed the appellant should have made would *not* have shown the motion to be baseless (i.e. legally unwarranted, or without adequate factual grounding). It would simply have *weakened*, without destroying, the Commonwealth's argument.

More specifically, the inquiry would have shown 1) that the motion's Appendix A accurately reflects an official Commonwealth pay scale, set by its central personnel agency, for *permanent* health care professionals, but 2) that the Commonwealth hires many (perhaps most) health care professionals, not as permanent employees, but under special contractual arrangements at higher rates. In light of that showing, the Commonwealth might have found it more difficult, but not at all impossible, to proceed with its claim for lower compensation on the basis of Appendix A. The legal standards governing special master compensation leave much to the district court's discretion. Fed.R.Civ.P. 53(a). And, an effort to tie the Special Master and staffs' compensation more directly to judicial compensation and to an "official" (though frequently skirted) Commonwealth pay scale is plausible, and within the realm of reasonable argument, even if that argument eventually would not carry the day. *Cf. Newton v. Consolidated Gas Co.*, 259 U.S. 101, 105, 42 S.Ct. 438, 439, 66 L.Ed. 844 (1922) (special master's compensation should be "liberal, but not exorbitant"; salaries "for judicial officers performing similar duties are valuable guides," but a "higher rate of compensation is generally necessary").

For another thing, the motion paper's failure to set forth a more complete account of Commonwealth pay practices did not impose significant additional costs upon the opposing party. *See, e.g., Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 557 (9th Cir.1986) (cost of foreseeable response by opposing parties relevant for determining what constitutes reasonable inquiry), *cert. denied*, 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987); Jerold S. Solovy et al., *Sanctions in Federal Litigation* § 2.04 at 2–18 (1991) (magnitude of burden in responding to filing affects thoroughness of investigation that must be performed). That party, the Special Master, and the Master's staff, all had ready access to the relevant compensation-related facts and quickly brought them to the court's attention. Of course, presenting these facts did cost the opposing party some time and effort. But Rule 11 normally does not require one party to uncover and to set forth the facts that support the other side's posi-

tion. *Cf. Continental Air Lines, Inc. v. Group Systems International Far East, Ltd.*, 109 F.R.D. 594, 598 (C.D.Cal.1986) (Rule 11 does not impose general duty to call all important facts to court's attention).

■ Finally, the motion, read fairly and as a whole, contains no significant false statement that significantly harmed the other side. We emphasize the word "significant" because the district court found one sentence literally false. That sentence says that the "rates of pay" for the Master's staff "outpace by a factor of 6 or more to 1, the rates of pay of their counterparts in the Public Health System." This statement is not literally false, if one uses the "official" pay scale for permanent employees as a comparison; in light of actual pay practices, we would characterize it as "overstatement" or "one-sided characterization." But were it literally inaccurate, it would not matter, for Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement. *Forrest Creek Assoc., Ltd. v. McLean Sav. and Loan Ass'n*, 831 F.2d 1238, 1244–45 (4th Cir.1987) (Rule 11 "does not extend to isolated factual errors, committed in good faith, so long as the pleading as a whole remains 'well grounded in fact.' "); Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 9(D) at 133–34 (1989) ("The focus of ... Rule [11] is the court paper as a whole, not individual phrases or sentences construed separately or taken out of context.... [A]t some level of analysis, every unsuccessful litigation paper contains an unsupported allegation or flawed argument.").

■ The district court provided several other justifications for its sanctions. It said that Colon, in the motion paper, (1) should not have used the word "bilking," (2) should not have called the payments "burdensome" without first investigating the actual "effects of these payments on the Department of Health's budget," (3) should not have said the litigation was in the "final stage of proceedings" without asking government officials "if full compliance and an end to this case were in fact close at hand," and (4) should not have asked to change the budgeting process with-

out first finding out "how the Special Master had been paid in the past."

In our view, these circumstances do not justify a Rule 11 sanction, whether considered separately or all together. (1) We concede that the word "bilking" is pejorative and, insofar as it implies cheating, without justification. We also concede the obvious point that argument made to a judge is more appropriate (and usually works better) without pejoratives. But to find support for a Rule 11 sanction in appellant's use of a single, rather mild (albeit unjustified) pejorative, is to impose a standard of perfection that few lawyers or judges would meet. We are not aware of any reason or authority suggesting that Rule 11 imposes such a standard.

(2) The motion paper does call the Special Master's budget "burdensome," but we do not understand where, or how, Rule 11 forbids such a characterization. No one disputes that the total amount of the Special Master's court-approved budget is $171,000. Nothing in the record suggests that the Commonwealth found this amount insignificant; nor do we understand either how further consultation with government officials would have led attorney Colon to change the characterization, or how the use of the word "burdensome" made a significant difference to the litigation.

(3) Neither do we understand how, or why, Rule 11 would forbid attorney Colon to characterize the litigation as in the "final stage of proceeding." Our opinion in *Navarro I* curtailed the scope of the Stipulation and also observed that "conditions" at Rio Piedras may be "largely ... in compliance." The motion paper made clear that the Commonwealth would soon file a brief arguing in favor of significantly limiting the Special Master's monitoring activity. Thus the statement seems to amount to an argument, reasonable in its context, that might, or might not, help convince a court. The record does not make clear how further "inquiry" or further consultation with government officials would have shown the argument to have lacked adequate "ground[ing] in fact."

(4) We agree with the district court that the motion paper, in requesting that "moni-toring services be compensated after their performance," does not take account of the fact that the current budgeting system provided for disbursement of budget funds (on a monthly basis) to the Special Master only *after* he performed services. Nonetheless, we do not see how the motion's possible misstatement can justify a sanction. Read fairly, and in context, the paper's request indicates that the Commonwealth objected to having to budget for a year's worth of monitoring services *in advance*, a portion of which might turn out to have been unnecessary. At worst, the paper's statement reflects a minor, technical confusion about the budgeting process, and one which apparently caused no harm. (After all, the opposing party, the Special Master, and the court, all understood, and could readily explain, how current budgeting worked.) *See Forrest Creek Associates, Ltd.*, 831 F.2d at 1244–45; Joseph, *Sanctions* § 9(D) at 133–34.

In sum, the district court, at most, could have found a few isolated instances of noncritical statements that further inquiry might have shown to be inaccurate or overstated. That further inquiry would not have shown the motion's requests to have been baseless. And, failure to make that inquiry did not unfairly impose upon the other party some special litigation cost or burden. This case differs significantly from the kinds of cases in which this court has upheld a district court's imposition of Rule 11 sanctions. *Cf. Muthig*, 838 F.2d at 605 (no reasonable inquiry where counsel could have readily learned from clients facts that would have shown their claim for intentional infliction of emotional distress lacked validity); *Ryan v. Clemente*, 901 F.2d 177, 179–81 (1st Cir.1990) (sanctioning harmful allegation that state officials failed to investigate illegal scheme where available record showed the contrary); *Cruz v. Savage*, 896 F.2d 626, 632–34 (1st Cir.1990) (sanctioning attorney for unreasonably bringing and pursuing nine frivolous claims, including some with either no supporting evidence or where record directly contradicted claim); *Bay State Towing Co. v. Barge American 21*, 899 F.2d 129, 131 (1st Cir.1990) (no reasonable inquiry where extensive record contains nothing to suggest why or how a

person could have believed most of filing's claims). We do not see how the district court could find a failure to undertake the "reasonable inquiry" that Rule 11 requires. The order of the district court is

*Reversed.*

## APPENDIX

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

ROBERTO NAVARRO, et al., Plaintiffs,

vs.

RAFAEL HERNANDEZ COLON, et al., Defendants.

CIVIL NO. 74–1301 (HL)

### MOTION FOR RELIEF FROM ORDER PURSUANT TO RULE 60(b)(5) AND (6)

TO THE HONORABLE COURT:

**COME NOW** the defendants, Hon. Rafael Hernández Colón, Dr. José Soler Zapata, Dr. Luis M. Polo, and Ms. Judith Mark, through the undersigned attorney and respectfully move the Court for relief from the Order of January 31, 1992 on the grounds that the judgment upon which it is based has been partially vacated, that it is no longer equitable that the order should have prospective application and that the proposed budgetary requests would unduly burden the Treasury of the Commonwealth of Puerto Rico.

### *MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF*

I. *In View of the Circuit Court of Appeals Judgment Entered December 18, 1991 (No. 90–1339) The Prospective Appointment of the Master is Premature.*

The Appeals Court decision of December 18, 1991 states that, "Orders of the district court inconsistent with the opinion of this Court issued this date are vacated." Said opinion has raised substantial questions regarding the breadth of the District Court's authority to implement institutional reform in Puerto Rico. The parameters of the District Court's authority over places and persons related to this class action will require a careful reconsideration of all past and current District Court orders whether these be in the form of a Consent Decree, unilateral commitments, or Master's recommendations adopted by the court. Until such an overview of the boundaries of this action is established, the long term re-appointment of the Master is premature. Such an overview will only be possible after March 16, 1992 when the parties will submit, for the Court's consideration, their responses to the Court's inquiries and their briefs interpreting the appellate decision.

II. *The Request for Prospective Funding and The Proposed Budgetary Outlays Serve to Impose an Undue Financial Burden.*

Although a more comprehensive brief addressing the current compliance requirements is scheduled for submission to the Court by March 16, 1992, the defendants now object vehemently to the prospective subsidy of monitoring activities represented by the Certification of January 30, 1992 and the Appendices thereto. The extent of monitoring not yet determined, the prepayment of these services is premature and burdensome on the Commonwealth of Puerto Rico Treasury. There is no reason why the *required* monitoring services cannot be compensated after their performance especially when the need for and extent of these services has not been defined. Rule 53(a) specifically allows for such a post-service compensation system.

Moreover, the budget outlays requested are completely incommensurate with the economies of public administration. The objection to the budget requests are as follows: 1) The Special Master's compensation of $50,000 far exceeds a fair compensation for the services required at this final stage of the proceedings; 2) The Special Master's Assistant's compensation of $40,000 far exceeds a fair compensation for services at this final stage of the proceedings; 3) The rates of pay for the Advisory Interdisciplinary Team outpace, by a factor of 6 or more to 1, the rates of pay of their counterparts in the Public

Health System of Puerto Rico; and 4) the purchase of top of the line office equipment is inconsistent with the monitoring services to be performed and the budgetary limitations which must be considered. These budgetary requests would occasion a bilking of the public treasury and are inconsistent with the opinion of the Court of Appeals. What is a reasonable monitoring expenditure will be evident only following the submission of the parties' briefs by March 16, 1992.

WHEREFORE, the defendants respectfully ask for the above described relief from the Order of January 31, 1992 and pray that any future budgetary expenditures should reflect the current income levels of the health care professionals who dutifully serve the people of Puerto Rico (Please See Exhibit A), that the purchase of office equipment be limited to the minimum, necessary items at reasonable cost, that the Special Master and Assistant be permitted an hourly compensation commensurate with the hourly income of a Commonwealth District Court Judge and Law Clerk (Please See Exhibit A), and that the services of all persons engaged in monitoring be compensated post-performance instead of as an advance as permitted by Rule 53(a) and originally stated in the Order of February 8, 1985 in this case.

I HEREBY CERTIFY that on this date, a true copy of the foregoing document has been sent by mail to: **DAVID M. HELFELD, MASTER,** Special Master, Box 22712, University of Puerto Rico, Rio Piedras, Puerto Rico 00961, **ALICE NET CARLO, GARCIA RODON, CORREA MARQUEZ & VALDERAS,** Citibank Tower, Eighth Floor, Hato Rey, Puerto Rico 00917 and **ARMANDO CARDONA, ESQ.,** Legal Services Corporation, Box 21486, Rio Piedras, Puerto Rico 00928.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 20th day of February, 1992.

> JORGE E. PEREZ DIAZ
> Secretary of Justice
> /s/ Kenneth Colon
> KENNETH COLON
> Director
> Attorney # 202813
> Federal Litigation Division
> Department of Justice
> P.O. Box 192
> San Juan, Puerto Rico 00902
> Tel. 721–2900 Ext. 268

cdc

c:\chearson\navarro.mro

## EXHIBIT A

**COMMONWEALTH OF PUERTO RICO**
**Fees For Comparable Position**
**(All fees are for highest paid worker;**
**hourly fees assume 2000 hour work year)**

| Position | Fee |
|---|---|
| Superior Court Judge | $54,000.00/yr or $27/hour |
| Superior Court Law Clerk | $20,000.00/yr [1] or $10/hour |
| Psychiatrist | 11.20/hour [2] |
| Psychologist | 11.20/hour [3] |
| Social Worker | 9.80/hour |
| Occupational Therapist | 7.90/hour |
| Quality Assurance Director | 7.90/hour [4] |

cdc
c:\chearson\exh

1. Approximate

2. Approximate

3. Approximate—based on fee for psychologist

4. Approximate—based on fee for occupational therapist