Louis DONATO, in his capacity as Administrator of the Estate of Gloria Zinni, and as Natural Guardian of the Heir–at–Law, and under certain Will and Trust Documents, Dana Zinni Donato, and as Trustee of the Estate of Domenic A. Zinni, Plaintiff,

v.

RHODE ISLAND HOSPITAL TRUST NATIONAL BANK and James Winoker, in their capacity as Co–Executors and Co–Trustees for the Trust of Domenic A. Zinni, Deceased, and Richard H. Pierce, Esq., as Partner of the Law Firm of Hinckley, Allen & Snyder, and John Doe and Jane Doe, partners in said Firm, Defendants.

No. 97–283L.

United States District Court,
D. Rhode Island.

June 15, 1999.

Arlene Violet, E. Providence, RI, Marty C. Marran, Cranston, RI, for plaintiff.

Steven Snow, Partridge, Snow & Hahn, Providence, RI, (For R.I. Hospital Trust National Bank), Stephen J. Reid, Jr., Staci L. Sawyer, Blish & Cavanaugh, Providence, RI, for defendants.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

Plaintiff Louis Donato ("Donato") is the executor of the estate of Gloria Zinni and the guardian of Gloria's daughter and heir Dana Zinni Donato. This case began in state court in 1992 with allegations of nonfeasance against the Rhode Island Hospital Trust National Bank, James Winoker, the law firm of Hinkley Allen & Snyder, and Richard Pierce, a partner in that firm (collectively "defendants"). It was removed to this Court in 1997.

On September 29, 1998, this Court ruled that Donato's state law claims were preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et. seq. ("ERISA"). That unpublished opinion, which is attached as Appendix A to this Decision, denied Donato's motion to remand.

On April 12, 1999, Donato moved for this writer to recuse himself from the case. This writer had disclosed on April 22, 1998 that he had met Winoker several times through the Providence Country Day School. Donato believes that this creates either bias or the appearance of bias. His memorandum passes up the opportunity to make a clear, concise allegation, but the difference is not material because either, if proved, would require recusal.

Defendants oppose the motion, and they ask this Court to impose sanctions against Donato and/or his counsel under Fed. R.Civ.P. 11.

For reasons outlined below, this Court denies the motion for recusal. Attorneys Arlene Violet and Marty Marran have abdicated their most-basic responsibilities as members of this Federal Bar. They filed a written motion that they knew or should have known was frivolous, and they could be sanctioned for their delinquency. Such irresponsible lawyering darkens the reputation of all lawyers even though it primarily tars Violet and Marran. However, this Court declines to impose monetary sanctions in the interest of moving this case along to a hearing on the merits.

I. *The Motion to Recuse*

A. *The Standard Under § 455(a)*

Donato makes his motion under 28 U.S.C. § 455(a), which recites that "[a]ny justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

A judge should remove himself or herself from a case where a reasonable person, were he or she to know all the circumstances, would harbor doubts about the judge's impartiality. *See United States v. Voccola*, 99 F.3d 37, 42 (1st Cir. 1996); *El Fenix de Puerto Rico v. The M/Y JOHANNY*, 36 F.3d 136, 140 (1st Cir.1994). This includes the appearance of partiality. *See In re Martinez–Catala*, 129 F.3d 213, 220 (1st Cir.1997); *In re Cargill*, 66 F.3d 1256, 1260 n. 4 (1st Cir.1995). The test is not whether this writer believes he can decide the case fairly or whether Donato believes that. *See Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). *See also In re Martinez–Catala*, 129 F.3d at 220 (not judge's opinion); *Town of Norfolk v. U.S. Army Corps of Engineers*, 968 F.2d 1438, 1460 (1st Cir.1992) (not litigant's opinion).

■ However, a litigant must offer a factual basis and cannot compel disqualification simply on unfounded innuendo concerning the possible partiality of the presiding judge. *See In re Martinez–Catala*, 129 F.3d at 220; *Voccola*, 99 F.3d at 42; *El Fenix de Puerto Rico*, 36 F.3d at 140. The trial judge must hear cases unless some reasonable factual basis to doubt the impartiality of the tribunal is shown by some kind of probative evidence. *See El Fenix de Puerto Rico*, 36 F.3d at 141. A judge may not abdicate difficult cases at the mere sound of controversy. *See id.*

B. *Applied to this Case*

This Court makes a practice of disclosing any relationship or past events that it believes might create even rumblings about partiality. In this case, this writer disclosed two facts in open court at an April 22, 1998 hearing:

1) that this writer had a joint bank account opened and controlled by his wife at Hospital Trust (now BankBoston).

2) that this writer had met Winoker several times when their sons attended the Providence Country Day School.

1. A transcript of the relevant section of the April 22, 1998 hearing is included in Section II(B) below.

2. This second argument is as specious in law as it is skeletal in Donato's memorandum. (*See* P.'s Mem. in Supp. of Mot. To Recuse Pursuant to 28 U.S.C. Sec. 455(a) at 2–3.) This Court ruled against Donato on a motion to remand. However, the Supreme Court has noted that the standard for proving bias from information obtained in the courtroom is higher than for that obtained "extrajudicially." *See Liteky v. United States*, 510 U.S. 540, 554–55, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (judicial rulings alone .almost never constitute a valid basis for a bias or partiality motion) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)).

In the September 1998 opinion, this Court followed First Circuit precedent to hold that Donato's claims were preempted by ERISA. Later, it declined attorney Marran's invitation

This writer said at the April 1998 hearing that the connections did not appear to raise any partiality issues, and attorneys for all four parties said that they saw no issue to raise recusal.[1] The parties continued that day to argue the motion to remand, which this Court took under advisement and decided in the unpublished September 1998 opinion.

■ Now, Donato argues that this judge should recuse himself. At the May 21, 1999 hearing, Attorney Marran said that the Hospital Trust (now BankBoston) account does not raise a problem. Marran said the motion rests entirely on this writer's contacts with Winoker, although the brief filed with this motion also argues that this Court's refusal to grant Donato's motions also shows bias.[2]

■ At the May 21, 1999 hearing, this writer expanded upon the disclosure to explain the nature of the relationship with Winoker. Winoker is not a friend. He is hardly an acquaintance. This writer knew him by his first name during the 1970s, but the only connection was that Winoker and this writer each had a son in the Providence Country Day School Class of 1977. The boys were not friends. The parents never socialized. But over several years in

to suggest how Donato should structure his case.

Donato is in a hard place. The First Circuit has said that ERISA eliminates some state causes of actions without providing a federal equivalent. In the memorandum in support of this motion, Donato's attorneys sputter against proceeding to trial. However, this Court is not forcing anyone to endure a trial, and it has done nothing that the *Liteky* Court found objectionable. It set a trial schedule because that is the next procedural step when the parties have completed discovery.

Donato's attorneys proposed no alternative to trial until filing the motion to certify an appeal on the issue of remand that has been delayed by this motion. It is not this Court's role to announce sua sponte how Donato should proceed with his case. Donato and his attorneys need to decide where they want to go from here. Perhaps with a trial. Perhaps with a motion to amend the Complaint. Perhaps with the already-filed motion to certify an interlocutory appeal to the Circuit.

the late 1970s, this writer and his wife served on the school's Parents' Council, and this writer met Winoker at meetings. The only issues discussed related to the school. Winoker's place of residence, his occupation and his personal life were a complete mystery at the time.

The only meeting in the past two decades was an evening probably in 1983 when this writer and his wife accidentally met Winoker and his wife waiting for tables to eat chowder and clam cakes at George's in Galilee, Rhode Island. The discussion lasted fewer than 10 minutes and never rose above small talk about the boys. The conversation only sticks in memory because Winoker's son, David, was attending the University of Bridgeport Law School, and this writer had not known the school existed.

This kind of relationship does not compel recusal because it was both superficial and antique. At its height in the 1970s, the relationship at issue was one between polite strangers whose sons happened to have been in the same class. *Cf. In re Cargill*, 66 F.3d at 1260 n. 4 (recusal appropriate where case is argued by attorney whose firm was simultaneously representing judge in a private issue). On top of that, this writer has not seen Winoker in 16 years and has not had a conversation of substance in more than two decades. *See In re Martinez–Catala*, 129 F.3d at 221 (noting the importance of time's passage since a lawyer had been a judge's law clerk). No reasonable person could believe that a judge would be partial to a person who he knew through a Parents' Council 20 years ago and never made any effort to see again.

At times, this Court recuses itself at even the suggestion of a problem because impartiality rests so centrally to a court's mission. It has reacted to litigants' fears even when they were not reasonable. However, this case is complicated because neither of the other judges in this district can hear this case. Judge Ernest Torres has already recused himself, and Judge

Mary Lisi's husband represents Winoker in this action. Therefore, the parties would face the expense and inconvenience of having this case transferred to New Hampshire, our sister jurisdiction in such matters. Where there is absolutely no appearance of bias, it would be unreasonable to impose such costs and delays on the parties.

## II. *Waiver Of The Motion*

Even if grounds for recusal existed in April 1998, Donato cannot press this motion almost a year later. Donato's attorney Violet explicitly waived the issue at the April 1998 hearing, and Donato waited more than 11 months to file this motion.

### A. *The Law Of Waiver*

■ The statute plainly contemplates that a party may waive an appearance-of-impropriety ground for disqualification. *See In re Cargill*, 66 F.3d at 1261. The statute itself does not define the form or prerequisites of such a waiver; it only imposes the condition that the waiver be preceded by a full disclosure on the record of the basis for the disqualification. *See* 28 U.S.C. § 455(e); *In re Cargill*, 66 F.3d at 1261.

The First Circuit held in *Cargill* that there was a waiver under § 455(e) where:

1) the judge made a complete disclosure.

2) the party's attorney unequivocally said that the party did not object to the judge's continued service in the case; and

3) the party heard about the disclosure from counsel and delayed the protest until a month had passed and the judge had issued an opinion on a motion to dismiss.

*See In re Cargill*, 66 F.3d at 1261–62.

### B. *Applied To This Case*

■ Donato waived any grounds for recusal because he acted even less reasonably than the party in *Cargill*. Donato

was at the April 1998 hearing. (*See* Transcript of April 22, 1998 hearing at 1.) He heard this Court's disclosure and heard his attorney, Violet, make a clear waiver. Yet he waited 11 months and waited to see how this Court would rule on the motion to remand and a later motion for clarification before pressing this motion in court.

The April 22, 1998 hearing began with this writer's disclosures. Attorneys for all four parties were present and said that they would not move to recuse:

> THE COURT: I forgot to mention James Winoker is a defendant. First of all, before I hear arguments I just want to make some disclosures for the record. I know James Winoker. His son and one of my sons were classmates at Providence Country Day School Class of 1977, and my wife and I had occasion from time to time to meet Mr. Winoker and his wife at Country Day functions. And I think we met him once waiting for a table in a restaurant and chatted with them, probably 10 years ago. That's the extent of my knowledge of Mr. Winoker. But I do know him and know him by his first name. We've never socialized in any way. I want that to be on the record.
>
> Also, I want to put on the record that my wife has a small bank account at Rhode Island Hospital Trust National Bank where she put some funds that she inherited through her mother in an account. And I think she added my name to the account a few years ago. So I make these disclosures.
>
> I don't feel in my own mind that I have any problem in deciding this case, in deciding the merits of this case, or any part of this case. But if anyone thinks they want to move to recuse me I'll hear that motion.
>
> MS. VIOLET: We do not, your Honor.
>
> THE COURT: All right. Anybody else?
>
> MR. REID: No, your Honor.

MR. SNOW: No, your Honor.

MR. CORRENTE: No, your Honor.

(Transcript of April 22, 1998 hearing at 2–3.)

Violet's waiver was unequivocal. Donato now claims to differentiate between legal issues and credibility issues at trial, but this writer was explicit that he planned to rule on "the merits of this case" and "any part of this case."

In March and April 1999, Donato expressed concern to Violet about this writer's impartiality, (*see* letters attached to P.'s Mem.), but even the first letter was more than 10 months after the initial hearing. Donato waited to see how this Court would rule on his motion to remand. The *Cargill* panel spoke exactly to this kind of situation when it found that a party had waived the right to move for recusal based on an appearance of bias.

### C.  *The Additional Issue of Timeliness*

Defendants' counsel, who had not read the transcript of the April 1998 hearing, did not raise the explicit waiver argument, but said that the 11–month delay was a reason in itself to deny the motion.

This Court declines to reach this issue. Precedent cited in defendants' memorandum may well support defendants' position, but because Donato's motion fails so obviously on two independent grounds, this issue is superfluous.

### III.  *Sanctions Against Violet and Marran*

Donato is a plaintiff, and he feels aggrieved by defendants and by the federal court. He was apparently about one month away from trial in state court when his lawyers amended the Complaint to raise an issue about a pension plan. That led to the removal and ERISA preemption. This Court recognizes that preemption and the Supremacy Clause provide thin solace to a plaintiff who feels wronged. Certainly, Donato was not justified in forcing defendants to defend this motion merely be-

cause he has a fallacious memory, but this Court wants Donato to appreciate that he has received a fair hearing based on the law. This opinion is written to emphasize that Donato's concerns are taken seriously.

■■■ Attorneys Violet and Marran have greater responsibilities than their client, and they failed them. Attorneys must make a reasonable inquiry to assure that all motions are factually well-grounded and legally-tenable. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Lichtenstein v. Consolidated Servs. Group, Inc.*, 173 F.3d 17, 23 (1st Cir.1999) (applying objective standard). In deciding whether a lawyer's inquiry was reasonable, this Court weighs various factors including "the complexity of the subject matter, the party's familiarity with it, the time available for the inquiry, and the ease (or difficulty) of access to the requisite information." *Lichtenstein*, 173 F.3d at 23. An attorney may not escape sanctions merely by claiming that he or she was protecting a client's rights. *See Silva v. Witschen*, 19 F.3d 725, 730 (1st Cir.1994).

Violet and Marran failed in a simple case with which they were intimately familiar, had almost a year to research, and could have easily obtained a transcript. They did not order a transcript of the April 22, 1998 hearing. They did not make a legally credible argument in their motion to recuse. Even if a reading of the precedents would not have convinced Donato of the futility of a § 455(a) motion, the transcript would have shown Donato that his worries are based on a faulty memory, not an appearance of bias. Donato wrote Violet that this writer had socialized with Winoker and that our sons had a relationship, but the transcript shows that this writer had said explicitly in April 1998 that the families "never socialized in any way."

At a minimum, Violet and Marran should have known the motion was futile. However, this Court finds that *the lawyers knew the motion was unwarranted*, in part from Violet's explicit waiver in April 1998,

in part from Marran's languid oral advocacy, and in part because they both attached Donato's three letters to the motion to show the Court that they had been forced into filing.

Violet and Marran faced the problem of a client demanding action that they knew would be frivolous, and they let the attorney-client relationship deteriorate to the point that Donato was having his letters to Violet notarized. Rule 11 demands that attorneys deal with this type of dilemma in the privacy of their own offices. At times, a lawyer has a duty to say "No" to his or her client. *See Keating v. Rhode Island*, 785 F.Supp. 1094, 1100 (D.R.I.1992). Violet and Marran could have explained the law to Donato, or they could have just refused their client's dictate and let him seek other counsel. Instead, they pushed the problem onto defendants and this Court.

■■■ This was a frivolous motion based on warrantless allegations, including at least one factual contention—that this judge "has also candidly admitted that he and members of his family have had social relationships with at least one of the defendants and his family"—that would have been deemed false by the most-rudimentary investigation. (P.'s Mot. To Recuse Pursuant to 28 U.S.C. Sec. 455(a) at ¶ 3.) Violet and Marran are not guilty of mere mischaracterizations. *Cf. Navarro–Ayala v. Hernandez–Colon*, 3 F.3d 464, 468–69 (1st Cir.1993) (reversing district court). With only a reasonable inquiry, they would have uncovered facts and precedent that would have proved the motion futile. *See id.* (collecting reasonable inquiry cases).

However, this Court declines to impose monetary sanctions in deference to the overriding mission of providing parties with a just forum to settle their dispute. In this case, this Court errs on the side of caution in order to emphasize its impartiality. Although Violet and Marran have failed both as attorneys and officers of the court, sanctions might indirectly affect Do-

nato. The point of this civil action is the dispute between Donato and defendants. This Court wants to reach the merits and get this case resolved. The costs incurred by defendants cannot be substantial in the overall scheme of eight years of litigation, and absorbing those costs will keep defendants from becoming embroiled in collateral appeals under Rule 11. *See In re Williams,* 156 F.3d 86, 89–93 (1st Cir.1998) (lawyers who avoided sanctions could not seek appellate review of court's written findings), *cert. denied,* —— U.S. ——, 119 S.Ct. 905, 142 L.Ed.2d 904 (1999). *See also Lichtenstein,* 173 F.3d at 22 (party who requested sanctions must overcome "extraordinary deference" where court denied motion). Finally, the publication of this Decision will be sanction enough.

## CONCLUSION

To date, Donato has received the impartial hearings to which he is entitled under the law. He will continue to receive that same impartiality through to the conclusion of this action.

For the preceding reasons, this Court denies the motion to recuse and declines to impose monetary sanctions against Donato, Violet or Marran.

It is so Ordered.

## *APPENDIX*

### *MEMORANDUM AND ORDER*

Plaintiff Louis Donato ("plaintiff") is the executor of the estate of Gloria Zinni and the guardian of Gloria's daughter and heir Dana Zinni Donato. This case began in state court in 1992 with allegations of nonfeasance against the Rhode Island Hospital Trust Bank, James Winoker, the law firm of Hinkley Allen & Snyder, and Richard Pierce, a partner in that firm (together "defendants"). After the third amended complaint was filed in 1997, defendants removed the case to this Court asserting that one of the new claims implicated the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et. seq. ("ERISA").

Plaintiff filed an objection to removal, and Magistrate Judge Robert W. Lovegreen, treating it as a motion to remand, ruled that the suit had been properly removed to this Court and should not be remanded to state court. Relying on Supreme Court and First Circuit precedents, he reasoned that ERISA preempted at least part of the claims made in plaintiff's complaint.

This case is before this Court on plaintiff's objection to Magistrate Judge Lovegreen's decision.

### II. *Standard of Review*

Magistrate Judge Lovegreen styled his decision a "Report and Recommendation," but a motion to remand is non-dispositive and is better-characterized as a final order. *See Delta Dental of Rhode Island v. Blue Cross & Blue Shield of Rhode Island,* 942 F.Supp. 740, 746 (D.R.I.1996). Thus, this case is really an appeal of a final order, rather than an objection to a report and recommendation. The appropriate standard of review is whether this Court finds the magistrate judge's conclusions to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); D.R.I.R. 32(b).

### II *Discussion*

In this case, Magistrate Judge Lovegreen's decision is not clearly erroneous or contrary to law. In fact, it is the correct decision based on the precedents in *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), *Carlo v. Reed Rolled Thread Die Co.,* 49 F.3d 790 (1st Cir.1995), and *Vartanian v. Monsanto Co.,* 14 F.3d 697 (1st Cir.1994). As such, there is no utility in completely rehashing the arguments.

Briefly, this complaint "relates to" an ERISA plan under the first prong of the *Ingersoll–Rand* test because "the court's inquiry must be directed to the plan." *Ingersoll–Rand,* 498 U.S. at 140, 111 S.Ct. 478.

Plaintiff correctly notes that the cause of action is based on the actions and inactions of defendants and not on the machinations of a retirement plan. (*See* Memo. Of Law in Supp. of Pl.'s Objection to Report and Recommendation, at 4.) But plaintiff does not recognize the breadth of ERISA preemption. As plaintiff notes, there would be no federal jurisdiction for a state law claim merely because the alleged misdeeds involved an FDIC-insured bank account. (*See* id.) However, ERISA is different.4 Its preemption provision cuts a wide swath, reaching state laws that "relate to" employee benefit plans in a broad sense. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 99, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (noting "breadth" of intended preemption in legislative history).

In *Carlo*, the First Circuit rejected an argument that is nearly identical to the one made here by plaintiff. Carlo sued his former employer for misrepresentation and argued that although the misrepresentation concerned a retirement plan, the claim did not relate to the plan itself. *See Carlo*, 49 F.3d at 793. Carlo emphasized that he did not seek greater benefits or damages from the plan. *See id.* The First Circuit recognized that some courts have found against preemption in similar cases, in part because ERISA preemption often leaves a plaintiff without a remedy. *See id.* at 793–94. But it held that Carlo's claims were preempted because the court would have to analyze the ERISA-covered plan to calculate damages. *See id.* at 794.

As Magistrate Judge Lovegreen noted, the court in this case would have to analyze ERISA to calculate damages and to decide whether defendants failed to protect Domenic A. Zinni's intentions regarding the distribution of his estate. (*See* Report and Recommendation, at 10–11.) Defendants' alleged duties are inexorably intertwined with ERISA, and Congress has explicitly placed those issues in the hands of federal law deciders.

For the preceding reasons, this Court affirms Magistrate Lovegreen's decision. Because plaintiff's claims are preempted, removal was proper and plaintiff's motion to remand was appropriately denied.